MONCURE, J.
In September 1853 Clinton James, a free negro, presented a petition to the judge of the Circuit court for the city of Richmond, stating that he had been unlawfully prosecuted before the mayor of said city for a. violation of an ordinance thereof, providing that ‘ ‘no negroes shall keep a cook-shop *within said city, ’ ’ under the penalty of stripes, at the discretion of the mayor; and that he had been duly licensed to keep a cook-shop under the provisions of the act of assembly of April 17th, 1853, Sess. Acts, p. 20, § 4, insisting that the said ordinance is in conflict with the said act of assembly, and therefore void; and that the mayor, in attempting to enforce the said ordinance, was exceeding- his jurisdiction; and praying for a writ of prohibition to restrain the said mayor from holding cognizance of any such prosecution. The writ was accordingly awarded by the judge in vacation, issued by the clerk, returnable to the first day of the next term of the court for the trial of civil causes, executed on the mayor, and returned. At the next term, the parties appeared by their attorneys, and the mayor moved the court to discharge the said writ; but the court overruled the motion, and gave judgment for costs against the city. To that order a supersedeas was awarded by this court.
The writ of prohibition has not very often been resorted to in this state; the present being the first case of the kind which has been before this court; though there have been three cases before the General court, viz: Miller v. Marshall, 1 Va. Cas. 158; Hutson v. Lowry, 2 Id. 42; and Jackson v. Maxwell, 5 Rand. 636. Until the enactment of the new Code, there appears to have been no provision in our statute law concerning the writ of prohibition. It has always, however, been regarded as an existing legal remedy in this state, as the cases just cited will show. In the Code, and in the new Constitution and the legislation under it, the remedy is fully recognized, and various provisions are made in regard to it. Code, p. 612, ch. 155, p. 620, § 4; 621, § 3; 622, § 8; 641, § 4; Constitution, art. vi, | 9 and 11; Act of June 5, 1852, ch. 61, § 2, 3, 9 and 12, Sess. Acts, p. 53-4. Eor the nature of the writ and method of proceeding under it, *see 3 Black. Com. 112; 8 Bac. Abr. 206, tit. Prohibition; 7 Comy. Dig. 135, same title; Home v. Earl Camden, 2 H. Bl. 533; Gould v. Gapper, 5 East’s R. 345; 1 Saund. 136, and notes. Much information on the subject may also be derived from the case of Williams, ex parte, 4 Pike’s R. 537; appended to which is a note giving the form used in the proceeding. See also, Arnold v. Shields, 5 Dana’s R. 18.
In the petition for the supersedeas in this case, two errors are assigned in the proceeding and order complained of:
I. That even if the judgment of the mayor against James would be improper, or of questionable propriety, the writ of prohibition does not lie from the Circuit court to prevent the mayor from adjudging the question.
II. That the ordinance was not in conflict with the act of assembly; or if it was, the act and not the ordinance should be made to give way.
In support of the first ground of error, it was argued that the mayor has ample power conferred on him by the charter, (Sess. Acts 1852, p. 265, §50,) to “take cognizance of such cases as majr be brought before him under the laws of the state, and in all cases in which any ordinance or by-law of the city is alleged to have been violated;” that therefore he had power to decide whether the ordinance in question was valid or not, and it was no excess of jurisdiction-to do so: And that the assumption that he would decide wrong when the case came under his judgment, was wholly unwarrantable, and can, in no view of the subject, furnish ground of prohibition. I incline to think that this argument is well founded. See the cases of Home v. Earl Camden and Arnold v. Shields, before cited. But in my view of this case, it is unnecessary to decide this question.
In regard to the second ground of error, I am of ^opinion that the ordinance was not in conflict with the act of assembly. The only object of the act was to aid in raising a revenue by laying a tax on the business of keeping a cook-shop. It was not the object, nor the effect of the act, to give to every person who paid the tax and obtained a license to keep a cook-shop, the right to do so, notwithstanding any police regulations which might otherwise lawfully be made for the good government of a city or town, much less to repeal or annul an3’- such regulations in actual existence at the time of the passage *473 of the act. If the ordinance would have been lawful, had there been no such act, it is lawful notwithstanding' the act; for there is nothing in the act to render it unlawful. The business of keeping a cook-shop before the passage of the act, was a lawful business, which any man might pursue, subject only to such lawful public regulations as might be made in regard to its being carried on within the limits of a town. The effect of taxing it was to restrict, not to enlarge the right of pursuing it, nor to exempt it from such lawful police regulations. The Code, ch. 54, £ 17, p. 285, after conferring a great many specific powers on the council or board of trustees of a town, gives them the general power to protect the property of the town and its inhabitants, and preserve peace and good order therein ; and for carrying into effect these and their other powers, authorizes them to make ordinances and by-laws consistent with the laws of the state, and to prescribe fines or other punishment for violations thereof. These provisions, not being in conflict with any provision of the charter of the city of Richmond, nor inconsistent with the act passed March 30, 1852, revising and reducing into one act the provisions of the said charter, have been applicable to the said city and the council thereof ever since the enactment of the Code, (see Code, p. 287, £ 26, Sess. Acts 1852, p. 259, £ 1,) and authorized the *said council to make such an ordinance as that which is complained of in this case. Such authority was also conferred by f 33 of the said act of March 30, 1852, Sess. Acts, p. 263. The record does not show when the ordinance in question was made; though it is stated in the petition for the supersedeas to have been made March 21st, 1851, and of course since the Code went into effect. If the fact had been otherwise, and been deemed material by the party who applied for the writ of prohibition, he should have taken care to have had it stated in the record; especially as the writ was awarded on his ex parte motion and petition, without notice.
There is some difference between the terms of the ordinance, as stated in the petition for the said writ, and the petition for the supersedeas. In the former, it is stated as declaring, that ‘‘no negro shall keep a cook-shop within said city,” under the penalty of stripes, at the discretion of the mayor. In the latter, as declaring in the 3d section, that “no negro shall keep a cook-shop or eating-house, unless he be licensed to keep an ordinary or house of entertainment;” and in the 7th section, that the violation of the 3d section is to be punished with stripes. The ordinance, as stated in the former, wholly interdicts a free negro from keeping a cook-shop; as stated in the latter, it merely imposes a restriction upon his right to do so by requiring him to obtain a license to keep an ordinary or house of entertainment. The violation of the ordinance-is stated in each to be punishable with stripes. Whether the ordinance be in the one or the other of these two forms, is immaterial. The council had a right to make it in either, if in their opinion necessary “to preserve peace and good order,” or “to suppress gaming and tippling-houses,” or “to prevent disorderly conduct,” in the city. Having a right to make it for *that purpose, the presumption is that they did so make it, in the absence of evidence to the contrary.
Cook-shops kept by free negroes, “being in effect taverns,” in the language of the petition for the supersedeas, “negro taverns of the lowest description, and” liable to become “sources of infinite disorder and corruption among the black population, slave as well as free,” the propriety and necessity of regulating, restraining, or wholly interdicting them in the city of Richmond, must be apparent to all.
There is nothing in the nature of the punishment which can render the ordinance unlawful. A free negro, in common with a slave, is punishable alone with stripes for certain misdemeanors enumerated in the Code, ch. 200, £ 8, p. 754, and may be punished with stripes or any other misdemeanor. Id. ch. 212, £ 14, p. 788. Stripes being the ordinary punishment inflicted by law upon a free negro for a misdemeanor, may properly be inflicted upon him for the violation of an ordinance of city police. But no objection is made to the nature of the punishment in this case, the only objection being to the supposed conflict between the ordinance and act of assembly, which I have endeavored to show does not exist.
It was suggested, in the course of the argument, that the effect of the writ of prohibition, and of the order overruling the motion to discharge it, was to acquit Clinton James of a criminal offense, and therefore no writ of error lies to reverse the order, upon the principle that no writ of error lies for .the commonwealth in a criminal case, except in some particular cases in which the writ is given by statute ; of which this is not one. I think that a consideration of the peculiar nature of the remedy by writ of prohibition will remove this difficulty: It is not a part or continuation of the prohibited proceeding, by removing it from one court to another for the purpose of '^adjudication in the latter: But it is wholly collateral to that proceeding ; and is intended to arrest it, and prevent its being further prosecuted in a court having no jurisdiction of the subject. It is, in effect, a proceeding between two courts — a superior and an inferior — and is the means whereby the superior exercises its due superintendence over the inferior, and keeps it within the limits and bounds of the jurisdiction prescribed to it by law. The writ “issues,” says Bacon, “out of the superior courts of common law to restrain the inferior courts, upon a suggestion that the cognizance of the matter belongs not to such courts; and in case they exceed their jurisdiction, the officer who executes the sentence, and in some cases the judges *474 that' gave it, are in such superior courts punishable, sometimes at the suit of the king, sometimes 'at the suit of the party, sometimes at the suit of both, according to the nature of the case.” The object of it, ‘ ‘in general, is the preservation of the right of the king’s crown and courts, and the ease and quiet of the subject. For it is the wisdom and policy of the law to suppose both best preserved when everything runs in its right channel, according to the original jurisdiction of every court; for by the same reason that one court might be allowed to encroach, another might; which could produce nothing but confusion and disorder in the administration of justice.”
It seems that a prohibition may be issued at the instance of a mere stranger; 8 Bac. Abr. Prohibition C; 7 Comy. Dig Prohibition E; though it is generally, if not universally, issued at the instance of the party aggrieved. 3 Black. Com. 113; Home v. Earl Camden, 2 H. Bl. 533. It is directed to the judge before whom the plea complained of is pending, and to the party who prosecutes it, and commands the former not to hold, and the latter not to follow the plea. 3 Black. Com. 113. If the party applying for the *writ be directed to declare in prohibition, as he may be, if the point be too nice and doubtful to, be decided merely upon a motion, (Id.) and it seems will be, on the demand of the party against whom the application is made; 7 Comy. Dig. Prohibition I; Remington v. Dolby, 9 Q. B. 176, 58 Eng. C. L. R. 174, 178; Arnold v. Shields, supra; Withers v. Commissioners of Roads, 3 Brevard’s R. 83; the proceeding then becomes an action, which, in its origin, was a qui tarn action, founded on the fiction (which was not traversable,) that the defendant had proceeded in the suit after the writ had been obtained and delivered to him; no such writ having in fact been so obtained and delivered. The action, in the form of it, was to recover damages of the defendant for proceeding in contempt of the writ, and to the injury of the plaintiff; but in substance, it was a convenient mode of trying whether a prohibition ought to issue; and it was made practicable by considering all that related to the contempt, incurred by proceeding after the writ had actually issued, as mere form, and the damages nominal, Home v. Earl Camden, supra. By a provision in the Code, 612, ch. 155, (similar to stat. 1 Will. iv. ch. 21, § 1,) the action is stripped of its fictitious form, and only the substance of it now remains. It is thereby enacted that the declaration shall be expressed to be on behalf only of the party applying for the writ, and not on behalf of him and the commonwealth ; and shall set forth so much only of the proceedings as may be necessary to show the ground of the application, without alleging the delivery of a writ or any contempt; and shall conclude by praying that a writ of prohibition ' may issue; to which declaration the defendant may demur or plead; and judgment shall be given that the writ do or do not issue, as justice may require; and the party in whose favor such judgment is given, whether on verdict or otherwise, shall recover his costs; and *in case a verdict shall be given for the plaintiff, the jury may assess damages for which judgment shall also be given, but such assessment shall not be necessary to entitle the plaintiff to costs.
Erom the foregoing summary I think it must be manifest that the remedy by prohibition is distinct from and independent of, though collateral to, the proceeding sought to be prohibited; and that whether such proceeding be civil or criminal, (as it may be,) the nature, object and incidents of the remedy are the same; it being in ether case a civil remedy to recover damages for the exercise of an unlawful jurisdiction, and to prevent the further exercise thereof.
The right of appeal is given by law in all cases of prohibition, and cannot be denied in a case in which the proceeding complained of is a criminal proceeding. Whether it be civil or criminal, damages and costs may be recovered against the defendant in prohibition; and he should have the same right to reverse the judgment for error therein in the one case as in the other. It is true that where the proceeding is criminal, the effect of the writ of prohibition may be to prevent the further prosecution of an offense by subjecting the judge of the inferior court and the prosecutor to an attachment for proceeding after the delivery of the writ to them. But this mere consequence of the writ is not an acquittal of the offense (which has never in fact been tried) ; and a supersedeas to the order awarding the writ, or refusing to discharge it, cannot be considered as a writ of error for the commonwealth in a criminal case.
The writ of prohibition was awarded in this case without first ruling the defendant to show cause against it. All the authorities seem to show that such a rule is necessary. 7 Comy. Dig. 169, Prohibition (H 1); 8 Bac. Abr. 222, Prohibition (F); 1 Saund. 136, n. 1; Arnold v. Shields, 5 Dana’s R. 18; Williams, ex parte, *4 Pike’s R. 542, 545. In the State v. Allen, 2 Ired. Law R. 183, Gaston, J., speaking of the writ, said, “Such an act of authority will not be exerted, unless a prima facie case, well verified, be first made out, showing an apparent necessity for this intervention ; nor unless an opportunity be afforded to those sought to be prohibited, of showing cause against it. This we understand to be a well settled rule of practice. ”
No inconvenience can result from requiring the rule, as the service of it will have the effect of staying the proceeding complained of until further order discharging the rule; and it seems that the defendant or the judge of the inferior court would be subject to an attachment foregoing on with the proceeding after such service and before *475 such further order. 1 Saund. 136, n. 2; Williams, ex parte, 4 Pike’s R. 543, 545.
The following' would seem to be the proper course to be pursued on an application for a writ of prohibition to a Circuit court, or a judge thereof in vacation: The ground of the application should be set out in a proper suggestion, verified by affidavit, as to such material facts as do not appear on the record ; or in affidavits instead of a suggestion, according to the Code, ch. 155, p. 612. If upon such suggestion or affidavits the court or judge be clearly of opinion that there is no good ground for a prohibition, it ought at once to be denied. But if otherwise, a rule should be made upon the adverse party to show cause why the writ should not be issued. The execution of the rule upon the party and the judge of the inferior court will have the effect of a prohibition quous-que, or until the discharge of the rule.
Upon the return of the rule executed, the court or judge will make it absolute or discharge it, as may then seem to be proper; and in the former case, may direct the applicant to declare in prohibition before writ issued; and ought to do so, if the defendant require it. If such direction be given, *the further proceedings in the case will of course be in pursuance of the Code, ch. 155, p. 612.
I am for reversing the order, and discharging the writ, with costs to the plaintiff in error, both in this court and the Circuit court.
The other judges concurred in the opinion of Moncure, J.
Judgment reversed.